Filed 4/24/26  Ornelas v. De Jong's Dover Dairy CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LUIS FELIPE DIAZ ORNELAS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DE JONG'S DOVER DAIRY, LLC, <br><br> Defendant and Respondent. | F089076 <br><br> (Super. Ct. No. 22C-0214) <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kings County.  Valerie R. Chrissakis, Judge.

Mendez & Sanchez, Alex D. Guerrero for Plaintiff and Appellant.

Horvitz & Levy, Stephen E. Norris, Mark A. Kressel; Procter, Shyer & Winter, Lisa N. Shyer for Defendant and Respondent.

-ooOoo-

Luis Felipe Diaz Ornelas poured and installed concrete walls for his employer Supreme Construction, Inc.  De Jong's Dover Dairy, LLC hired Supreme as a contractor to pour and install concrete walls to an excavated pit, which had been excavated by the owner, De Jong.

While Ornelas worked in the pit, a wall collapsed on him causing serious injury. He sued De Jong, and De Jong moved for summary judgment, contending essentially that this was an ordinary worker's compensation matter.

The trial court agreed with De Jong, stating "a hirer or landowner … is ordinarily not liable for injuries to contract workers," and Ornelas failed to raise "a triable issue of fact as to the applicability of an exception" to the rule. As explained below, we disagree and reverse the judgment.

## BACKGROUND

De Jong concluded the dairy needed a "sand separator" to separate "water from … sand," keeping pipes on the dairy flowing free. Building a sand separator requires "[d]igging a hole and putting cement walls and a cement floor in it."[1] Supreme—a general contractor—was hired only to install the cement; De Jong would dig the pit.

The parties did not discuss permits, engineering, or any analysis relative to the project. De Jong, as agreed, excavated the pit, and Supreme poured the concrete. Supreme is not an excavator but felt confident in De Jong because De Jong previously dug a pit for a similar project. Prior to this incident, Supreme would simply visually inspect the dirt before beginning the job.

Gregory Axten, a "licensed professional civil engineer and geotechnical engineer," offered expert opinion for Ornelas. The expert assumed De Jong did the excavation and Supreme "pour[ed] concrete only[.]" He stated De Jong "breach[ed] … the standard of care for excavation" by neither "perform[ing] a soils engineering study or subsurface testing," nor "obtain[ing] an appropriate excavation permit[.]" A proper analysis would have "revealed" "the soil instability that caused" injury to Ornelas.

The expert explained Supreme, "simply pouring concrete," would perform "a visual only inspection," but such an inspection "would not have revealed … the soil

---

[1] The parties interchangeably use the terms concrete and cement.

instability in the walls of the [excavated] pit[.]" He concluded "soil density" or "pit wall instability[] was not an open and obvious danger."

On these facts, De Jong moved for summary judgment. Ornelas, of course, opposed the motion.

The trial court ruled in De Jong's favor. It recognized at issue in the case was an " 'unsafe concealed condition' " theory of liability.[2] The court stated "a hirer as landowner may be independently liable to the contractor's employee … if (1) the hirer knows or reasonably should know of a concealed, pre-existing hazardous condition on the premises, (2) the contractor does not know and could not reasonably ascertain the condition, and (3) the landowner fails to warn the contractor," citing *Kinsman, supra,* 37 Cal.4th at p. 675.)

The trial court next found "a jury could reasonably infer" De Jong "should have known of" the soil instability had it conducted any study prior to excavating the pit. The court also found, however, Supreme "could have … reasonably detected" the latent hazard had it "engage[d] in inspections … delegated to it as the independent contractor." It explained "Supreme was charged with a responsibility to conduct more than a visual inspection of the worksite, including an inspection of the integrity of the pit wall[.]" In so explaining, the court explicitly did not accept the Supreme expert's opinion "as to what constitutes a reasonable inspection in this case," i.e., the opinion Supreme's duty was to conduct a visual inspection which would not have revealed the hazard.

Finally, the trial court explicitly found "a reasonable inspection" here "would have required a thorough assessment of the pit wall stability" contrary to, again, the expert

---

[2] The theory, discussed in detail below, is known as the *Kinsman* exception to the *Privette* doctrine. (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 675 (*Kinsman*); *Privette v. Superior Court* (1993) 5 Cal.4th 689, 21 (*Privette*).)

3.

opining a simple visual inspection would have been reasonable under the circumstances.[3] It accordingly entered judgment in De Jong's favor.

## DISCUSSION

Did the trial court properly grant summary judgment? Ornelas claims he raised a triable issue of material fact by presenting specific expert opinion regarding duties and reasonable inspections by the parties in this case. De Jong contends there is no triable issue of material fact for two reasons. One, Supreme reasonably could have discovered the soil's instability. Two, the expert opinion was inadmissible.

In our view, Ornelas raised a triable issue of material fact with respect to the scope of Supreme's work, which in turn informs its duty to inspect the premises, and whether a reasonable inspection under that duty would have discovered the latent hazard. We will reverse the judgment.

## I. Standard of Review

"We review a trial court's granting summary judgment de novo, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' [Citation.] We 'liberally constru[e] the evidence in support of the party opposing summary judgment and resolv[e] doubts concerning the evidence in favor of that party.' " (*Peralta v. Vons Companies, Inc.* (2018) 24 Cal.App.5th 1030, 1034 (*Peralta*).)

A trial court properly grants summary judgment when " 'all the papers submitted show that there is no triable issue as to any material fact' such that 'the moving party is entitled to judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) 'The moving party bears the burden of showing the court that the plaintiff "has not established, and cannot reasonably expect to establish, a prima facie case." ' [Citation.] The burden

---

[3] The trial court concluded, notwithstanding the expert opinion, "a reasonable inspection [by Supreme] would have required a thorough assessment of the pit wall stability and that … such an inspection would have revealed the hazardous condition."

then ' "shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings ... but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action.' " ' " (*Peralta, supra,* 24 Cal.App.5th at pp. 1034-1035.)

## II. Premises Liability

"There is a strong presumption under California law that a hirer of an independent contractor delegates to the contractor all responsibility for workplace safety. (See generally *Privette*[*, supra,*] 5 Cal.4th [at p.] 721; [citation].) This means that a hirer is typically not liable for injuries sustained by an independent contractor or its workers while on the job. Commonly referred to as the *Privette* doctrine, the presumption originally stemmed from the following rationales: First, hirers usually have no right to control an independent contractor's work. [Citation.] Second, contractors can factor in 'the cost of safety precautions and insurance coverage in the contract price.' [Citation.] Third, contractors are able to obtain workers' compensation to cover any on-the-job injuries. [Citation.] Finally, contractors are typically hired for their expertise, which enables them to perform the contracted-for work safely and successfully." (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 37-38 (*Gonzalez*).)

"[A] hirer may," however, "be liable when it retains control over any part of the independent contractor's work and negligently exercises that retained control in a manner that affirmatively contributes to the worker's injury." (*Gonzalez, supra,* 12 Cal.5th at p. 38.) "[A] landowner who hires an independent contractor may [also] be liable if the landowner knew, or should have known, of a concealed hazard on the property that the contractor did not know of and could not have reasonably discovered, and the landowner failed to warn the contractor of the hazard." (*Ibid.*)

"A landowner's duty generally includes a duty to inspect for concealed hazards. [Citation.] But the responsibility for job safety delegated to independent contractors may

5.

and generally does include explicitly or implicitly a limited duty to inspect the premises as well." (*Kinsman, supra,* 37 Cal.4th at p. 677.)

In opposition to the De Jong motion for summary judgment, Ornelas elicited the expert opinion of Axten that Supreme's duty to inspect the land, *based on the scope of the work it contracted to perform*, was to perform a visual-only inspection which would not have exposed the latent defect in the dirt. The trial court, however, explicitly disagreed with the opinion, holding "Supreme was charged with a responsibility to conduct more than a visual inspection of the worksite, including an inspection of the integrity of the pit wall[.]" The court did not explain the basis for its conclusion elevating Supreme's inspection duty above that which the expert opined. The conclusion is flawed because it entails improper factual resolution at the summary judgment stage.

The trial court stated, in relevant part, at paragraphs 14 and 15 of its order, as follows:

> "14.    … Counsel also referred to the Axten Declaration for its assertion that 'a reasonable inspection for a non-excavating contractor simply pouring concrete, such as [Supreme], would be a visual only inspection[.]'

> "15.    The court disagrees. First, Plaintiff does not present authority that the court is required to accept the conclusion in the Axten Declaration as to what constitutes a reasonable inspection in this case. Further, taking into account the circumstances of the particular hazard at issue in this case <u>and</u> the particular work for which Supreme was hired to complete, *the court finds* that Supreme was charged with a responsibility to conduct more than a visual inspection of the worksite, including an inspection of the integrity of the pit wall, and that by failing to do so, *Supreme failed to conduct a reasonable inspection of the premises*." (Italics added.)

This explanation by the trial court would be appropriate in a statement of decision following a bench trial; however, it constitutes determination of disputed issues of fact and law which is not appropriate at the summary judgment stage of the proceedings. (See

6.

*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 840 [the trial court may not weigh the evidence in the manner of a factfinder to determine whose version is more likely true.].) The trial court's finding Supreme's duty to fully inspect the land resolved at least three separate factual disputes. First, it resolved whether Supreme was hired to pour concrete, or whether it was hired to pour concrete and excavate. Supreme contends it was hired to pour concrete only, leading to the second dispute: What is the duty to inspect when retained to complete the final step in the project rather than undertaking the entire project?

Ornelas's expert contended Supreme need, in the situation where it pours concrete but does not excavate, conduct "a visual only inspection," and such an inspection "would not have revealed … the soil instability in the walls of the [excavated] pit[.]" He added the latent hazard was not inherently obvious.

Third, the trial court implicitly found a visual inspection was unreasonable. Put simply, there is no basis to reject the expert's opinions and factually decide, at the summary judgment stage, the scope of Supreme's work, the scope of Supreme's duty to inspect, and the reasonableness of an inspection.

De Jong, below and here, directly attacks the expert's opinion via objection. The trial court did not rule on the objections but we must address them on appeal. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 ["[I]f the trial court fails to rule expressly on specific evidentiary objections, it is presumed that the objections have been overruled, the trial court considered the evidence in ruling on the merits of the summary judgment motion, and the objections are preserved on appeal."].) De Jong argues the expert's opinions are "irrelevant," inappropriate "legal conclusion[s]," and unfounded. We disagree on each point.

The expert opinion is not irrelevant. De Jong asserts the proper viewpoint is "what inspection would have been reasonable for" it because it delegated control and all duties to Supreme. De Jong's assertion simply restates a presumption. (See *Sandoval v.*

*Qualcomm Incorporated* (2021) 12 Cal.5th 256, 271.) The question at issue in this case is whether "the concealed hazards exception" to the presumption is applicable. (*Ibid.*) The answer depends, in part, on factual resolution involving Supreme's slated work, i.e., concrete alone or concrete and excavation, Supreme's attendant duty to inspect based upon its slate, and the reasonableness of said inspection. These questions are not amenable to resolution on summary judgment. More to the point, evidence regarding those questions is not irrelevant. (See *id.* at pp. 271-272 ["a landowner-hirer cannot effectively delegate its duties respecting a concealed hazard without disclosing that hazard to the contractor."].)

The expert's opinion does not constitute an impermissible legal conclusion. De Jong argues reasonableness is a question reserved for the trial court. But it truly presents a mixed question of law and fact, and the underlying facts here—scope of Supreme's work and an appropriate duty to inspect based on that scope—are disputed and not amenable to resolution at the summary judgment stage. In other words, neither the expert nor the court could decide reasonableness on the record in this case, leaving the facts in place to constitute substantial evidence Supreme's actions *were reasonable*.

Finally, De Jong contends the expert's opinion is "inadmissibly conclusory." The expert's opinions were, as they often are, based on the expert's "training, education[,] and experience," including a review of the discovery in the case. There is no reason to conclude the opinions were unfounded or otherwise conclusory. (Cf. *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 189 ["In light of the rule of liberal construction, a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial."]; *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 470.)

To defend the trial court's decision, De Jong relies heavily on *SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590 (*SeaBright*). There, the California Supreme

8.

Court held the hirer "presumptively delegated to [the independent contractor] any tort law duty of care … to ensure workplace safety for the benefit of [the contractor's] employees." (*Id.* at p. 601.) While true, this case raises the applicability of an exception—namely, the latent hazard exception—to the ordinary presumption. *SeaBright* simply did not deal with the exception at issue here.[4]

Similarly, an appellate court recently concluded a "hazardous condition was *reasonably discoverable* as a matter of law." (*Acosta v. Mas Realty LLC* (2023) 96 Cal.App.5th 635, 661.) There, however, the court explicitly relied on "undisputed evidence" relative to inspections. (*Ibid.*) The reasonableness of an inspection is at the *factual* core of this case. Indeed, the *Acosta* court recognized "an independent contractor does not have a duty to inspect all of the landowner's property or to identify hazards wholly *outside his [or her] area of expertise*"—another disputed fact in this case.[5] (*Id.* at pp. 661-662, emphasis added.)

In sum, De Jong effectively argues Supreme was negligent in accepting and performing the work it undertook because Supreme failed to investigate the land, ask any questions, and ultimately ensure workplace safety. Supreme counters its duty to ensure workplace safety is necessarily informed by the limited scope of its work, i.e., pouring concrete, and its duty in this case would not have discovered the latent hazard which injured Ornelas. These viewpoints are grounded in factual disputes not amenable to resolution on summary judgment. (See *Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 843 ["The questions of whether a dangerous condition could have been

---

[4] The decision in *SeaBright* discussed the "nondelegable duties doctrine," addressing whether a hirer is barred under law from delegating specific workplace safety duties to an independent contractor. (See, generally, *SeaBright, supra,* 52 Cal.4th at pp. 600-601.)

[5] Again, Supreme claims it is not an excavator and it was not retained to excavate.

discovered by reasonable inspection and whether there was adequate time for preventive measures are properly left to the jury."].)

## DISPOSITION

The trial court's judgment is reversed.  Costs are awarded to Ornelas.


                                                            SNAUFFER, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.